**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                                                  **16-CR-9G**

       **-v-**

**JAY NEAL,**

        **Defendant.**
_____

### REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Frank. P. Geraci, Jr. in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report on dispositive motions.

### PRELIMINARY STATEMENT

The defendant, Jay Neal ("the defendant") is charged in a multiple count indictment with having violated Title 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C), 856(a)(1) and Title 18 U.S.C. §§ 924(c)(1)(A)(i), 922(g)(1), 924(a)(2), 922(k) and 924(a)(1). Dkt. #10. He has filed a motion wherein he seeks suppression of "any statements taken in violation of his Fifth Amendment rights or in the alternative, that a hearing be conducted to resolve any outstanding factual issues." Dkt. #12, p. 3, ¶ 9. The government has responded to this motion by stating that it "is not aware of any statements made by the defendant to law enforcement following his arrest." Dkt. #s 13, p. 3, ¶A; 20, p. 10, ¶ C. As a result, this motion is denied as being moot.

The defendant has also filed a motion seeking to suppress the use of "evidence seized from him or from any area in which arguably he had a reasonable expectation of privacy." Dkt. #17, p. 2, ¶ 4. The government has filed its opposition to this motion (Dkt. #20), and this Court has taken the matter under advisement.

## **FACTS**

In October 2015, the defendant was under investigation by the DEA for allegedly "supplying large amounts of heroin and cocaine in and around the City of Buffalo." Dkt. #1, p. 3, ¶ 4. On October 20, 2015, arrangements were made for a controlled buy of heroin from the defendant by a confidential source ("CS") working with the DEA who advised that the defendant was "utilizing a stash house at 87 Mariner Street, Buffalo, N.Y." and that the defendant "would carry a handgun with him at all times." Dkt. #1, pp. 3-4, ¶ 4. The CS was equipped with a KEL listening device by DEA agents and surveillance of the agreed upon location for the sale of heroin by the defendant to the CS was undertaken by DEA agents as well as at 87 Mariner Street. The defendant was observed leaving 87 Mariner Street and followed to the meeting spot agreed on with the CS where he was observed and heard meeting with the CS in carrying out the sale of heroin by the defendant to the CS. Dkt. #1, p. 4, ¶ 4.

On October 21, 2015, at the direction of DEA agents, the CS contacted the defendant for purposes of making arrangements for the purchase of more heroin, and an agreed upon meeting place was agreed to by the defendant and the CS.

Surveillance units of the defendant and the agreed upon meeting place were established and the CS was once again equipped with a KEL listening device. The defendant was observed meeting with the CS and the DEA agents heard the defendant and the CS discuss the sale and purchase of 100 grams of heroin. The defendant was then observed leaving the meeting spot and was followed to 87 Mariner Street after stopping to pick up Quashawn Lawrence.[1] Both the defendant and Lawrence entered 87 Mariner Street and remained there for approximately one hour when they were observed leaving that address by DEA agents. It was at this point in time that the defendant and Lawrence were placed under arrest. A search of the defendant was conducted and a Ruger 9 mm handgun with a defaced serial number was seized from the defendant along with $10,000 in cash found on the defendant. Dkt. #1, pp. 5-6, ¶ 5.

## DISCUSSION AND ANALYSIS

The defendant's counsel asserts on information and belief that "neither probable cause nor reasonable suspicion existed for the agents to seize [the defendant] prior to obtaining a warrant to search him and the residence within the apartment building located at 87 Mariner Street, Buffalo, N.Y." Dkt. #17, ¶ 11.

---

[1] Lawrence was originally indicted as a co-defendant with the defendant but pled guilty to Counts 1 and 9 of the indictment on August 18, 2016. *See* Dkt. #21.

The defendant has not submitted an affidavit based on personal knowledge relating to the search of his person by law enforcement agents on October 21, 2015 and his claim of an illegal search and seizure of his person.

An attorney's assertion based on "information and belief" is "completely inadequate to raise a factual issue justifying a hearing." *United States v. Ruggerio*, 824 Supp. 379, 393 (S.D.N.Y. 1993), *aff'd* 44 F.3d 1102 (2d Cir. 1969). Since the defendant has failed to support these allegations by way of affidavits or factual assertions establishing a basis for these allegations, his request for a hearing "to determine the propriety of the acts by the agents" is denied. A claim supported by "[a]iry generalities, conclusory assertions" is insufficient to create a genuine issue of fact necessitating an evidentiary hearing. *United States v. Aiello*, 814 F.2d 109, 113-114 (2d Cir. 1987); *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992); *United States v. Solano*, 300 Fed. Appx. 83, 85 (2d Cir. 2008).

As to the actual claim of defendant's counsel that there was no probable cause or reasonable suspicion "for the agents to seize [the defendant] prior to obtaining a warrant to search him," this claim is rejected as being without legal merit.

### A. The *Terry* Stop Issue:

The uncontroverted facts set forth in the affidavit of S.A. Hill in support of the Criminal Complaint against the defendant (Dkt. #1) clearly establishes not only reasonable suspicion for the detaining and search of the defendant, but also clearly establishes legal probable cause for his arrest on October 21, 2016. Such reasonable suspicion justified a stop and detention of the defendant under *Terry v. Ohio*, 392 U.S. 1 (1968). As the United States Supreme Court has stated:

> The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Terry v. Ohio*, 392 US 1, 9, 20 L Ed 2d 889, 88 S Ct 1868 (1968); *United States v. Cortez*, 449 US 411, 417, 66 L Ed 2d 621, 101 S Ct 690 (1981). Because the "balance between the public interest and the individual's right to personal security," *United States v. Brignoni-Ponce*, 422 US 873, 878, 45 L Ed 2d 607, 95 S Ct 2574 (1975), tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "'may be afoot,'" *United States v. Sokolow*, 490 US 1, 7, 104 L Ed 2d 1, 109 S Ct 1581 (1989) (quoting *Terry, supra*, at 30, 20 L Ed 2d 889, 88 S Ct 1868). See also *Cortez*, 449 U.S, at 417, 66 L Ed 2d 621, 101 S Ct 690 ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity").
>
> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. See, *e.g., id.,* at 417-418, 66 L Ed 2d 621, 101 S Ct 690. This process allows officers to draw on their own experience and specialized training to make inferences from the deductions about the cumulative information available to them that "might well elude an untrained person." *Id.*, at 418, 66 L Ed 2d 621, 101 S Ct

5

> 690. See also *Ornelas v. United States*, 517 US 690, 699, 134 L Ed 2d 911, 116 S Ct 1657 (1996) (reviewing court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers). Although an officer's reliance on a mere "'hunch'" is insufficient to justify a stop, *Terry, supra*, at 27, 20 L Ed 2d 889, 88 S Ct 1868, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard, *Sokolow, supra*, at 7, 104 L Ed 2d 1, 109 S Ct 1581.
>
> Our cases have recognized that the concept of reasonable suspicion is somewhat abstract. *Ornelas, supra*, at 696, 134 L Ed 2d 911, 116 S Ct 1657 (principle of reasonable suspicion is not a "finely-tuned standar[d]'"); *Cortez, supra*, at 417, 66 L Ed 2d 621, 101 S Ct 690 (the cause "sufficient to authorize police to stop a person" is an "elusive concept"). But we have deliberately avoided reducing it to "'a neat set of legal rules,'" *Ornelas, supra*, at 695-696, 134 L Ed 2d 911, 116 S Ct 1657 (quoting *Illinois v. Gates*, 462 US 213, 232, 76 L Ed 2d 527, 103 S Ct 2317 (1983)). In *Sokolow*, for example, we rejected a holding by the Court of Appeals that distinguished between evidence of ongoing criminal behavior and probabilistic evidence because it "create[d] unnecessary difficulty in dealing with one of the relatively simple concepts embodied in the Fourth Amendment." 490 US, at 7-8, 104 L Ed 2d 1, 109 S Ct 1581.

*United States v. Arvizu, 534 U.S. 266, 273-274 (2002)*; see also *United States v. Bayless*, 201 F.3d 116, 132-133 (2d Cir. 2000).

Not only did the agents observe the drug transaction between the defendant and CS on October 20, 2015, they heard the defendant discuss the drug transaction with the CS. Dkt. #1, p. 4, ¶ 4. As a result, a controlled buy of drugs was arranged between the CS and the defendant to be consummated on October 21, 2015. After observing the defendant meet with the CS on October 21, 2015 and hearing him discuss the sale of 100 grams of heroin, the defendant was followed to 87 Mariner

6

Street, his "stash" house. Approximately an hour later the defendant was observed leaving 87 Mariner, and at that time he was arrested by the DEA agents. The surveillance of the defendant on October 20, 2015 and the controlled buy of drugs by the CS from the defendant certainly provided "reasonable" suspicion for the agents to believe that criminal activity by the defendant would be undertaken when they heard the defendant discuss another drug transaction on October 21, 2015. As a result, they certainly had a legal basis to stop and detain the defendant on October 21, 2015 under *Terry*.

Once the defendant was detained, it was legal for the agents to conduct a search of the defendant for weapons since they had been advised by the CS that the defendant "would carry a handgun with him at all times." Dkt. #1, pp. 3-4, ¶ 4.

> Firearms are dangerous, and extraordinary dangers sometimes justify unusual precautions. Our decisions recognize the serious threat that armed criminals pose to public safety; *Terry's* rule, which permits protective police searches on the basis of **reasonable suspicion** rather than demand that officers meet the higher standards of probable cause, responds to this very concern. *See* 392 US, at 30, 20 L Ed 2d 889, 88 S Ct 1868.

*Florida v. J.L.*, 529 U.S. 266, 272 (2000); *see also United States v. Colon*, 250 F.3d 130, 134 (2d Cir. 2001).

7

### B. Probable Cause for Arrest Issue:

Not only was there reasonable suspicion for the agents to make a Terry stop of the defendant on October 21, 2015, there was probable cause for arresting the defendant. The events of October 20 and 21, 2015 as described above provide a legal basis for arresting the defendant. As the United States Supreme Court has stated:

> To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause, *Orneleas, supra,* at 696, 116 S. Ct. 1657.

*Maryland v. Pringle*, 540 U.S. 366, 370-371 (2003).

> Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." Gagnon, 373 F.3d at 236. "[T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Because the standard is fluid and contextual, a court must examine the totality of the circumstances of a given arrest."

*United States v. Steppello*, 664 F.3d 359, 363-364 (2d Cir. 2011); *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008); *United States v. Howard*, 489 F.3d 484, 491 (2d Cir. 2007).

The totality of the circumstances of October 20 and 21, 2015 provided sufficient "knowledge and trustworthy information" to justify the agents' belief that the defendant was engaged in illegal drug activity on October 21, 2015. Not only did they have the prior information supplied by the CS, they had corroborated this information by their investigatory surveillance of the defendant on October 20 and 21 which included the recordings of the drug conversations between the defendant and the CS. As the Court said in *Steppello*:

> In addition to considering an informant's veracity, reliability, and basis of knowledge, in assessing the totality of the circumstances we also evaluate whether the information an informant provides is corroborated by independent police investigation because an informant who is right about some facts is more likely to be right about others. We consider such corroboration in evaluating the existence of probable cause even if only an informant's account of anticipated innocent activities is confirmed. Gagnon, 373 F.3d at 236 (alterations in original) (citations, internal quotation marks, and ellipses omitted).

*Steppello, supra* at 365-366.

Once the defendant was placed under arrest by the agents, they had a right to search his person as an incident to that arrest. *Chimel v. California*, 395 U.S. 752, 762-763 (1969); *United States v. Robinson*, 414 U.S. 218, 224 (1973); *Agnello v. United States*, 269 U.S. 20, 30 (1925). This search of the defendant revealed a Ruger 9 mm handgun with a defaced serial number and $10,000 cash.

9

## **CONCLUSION**

Based on the foregoing, the DEA agents had probable cause for arresting the defendant and searching his person on October 21, 2015. In the event that it is found that probable cause did not exist, there certainly was sufficient reasonable suspicion that criminal activity was afoot by the defendant which justified a detention and search of the defendant under *Terry* and its progeny. Therefore, it is recommended that defendant's motion to suppress the use of the evidence seized from him on October 21, 2015 be denied.

It is hereby **ORDERED** pursuant to 28 U.S.C § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statue, Fed.R.Crim.P. 58(g)(s) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time**

**waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

      The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:    March 3, 2017
            Buffalo, New York

                                      *S/ H. Kenneth Schroeder, Jr.*
                                      **H. KENNETH SCHROEDER, JR.**
                                      **United States Magistrate Judge**